# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
### ATLANTA DIVISION

| | | |
|---|---|---|
| SERGIO BEJARANO, | : | CRIMINAL NO. |
| Movant, | : | 1:05-CR-0477-CC-GGB-5 |
| | : | |
| v. | : | CIVIL ACTION NO. |
| | : | 1:10-CV-1919-CC-GGB |
| UNITED STATES OF AMERICA, | : | |
| Respondent. | : | MOTION TO VACATE |
| | : | 28 U.S.C. § 2255 |

## FINAL REPORT AND RECOMMENDATION

Movant, Sergio Bejarano, has filed a motion to vacate sentence under 28 U.S.C. § 2255. [Doc. 1498]. Presently before me for consideration are: Movant's § 2255 motion to vacate [Doc. 1498]; the United States of America's (hereinafter "Government's") response to the motion to vacate [Doc. 1508]; and Movant's motion for an evidentiary hearing [Doc. 1512] and motion to inquire about the status of the case [Doc. 1513]. For the reasons discussed below, I recommend that the Court deny the motion to vacate and issue a certificate of appealability on the issue of whether *Padilla v. Kentucky*, 130 S. Ct. 1473 (2010), announced a new rule of criminal procedure that is retroactively applicable to cases on collateral review.

## I. Background

On October 19, 2005, a grand jury in this Court returned a nine-count superseding indictment charging Movant and thirty-one co-defendants with multiple drug trafficking and money laundering offenses. [Doc. 140]. Specifically, Movant was charged with conspiring to possess controlled substances, namely cocaine and methamphetamine, with the intent to distribute (Count One); and with conspiracy to launder money (Count Nine). [*Id.*]. On January 19, 2006, Movant entered a negotiated plea of guilty to both counts. [Doc. 410]. Movant's written plea agreement entered into with the Government waived his right to appeal or collaterally attack his sentence. [Doc. 410-1 at 5-6, ¶ 12]. However, Movant reserved the right to appeal an upward departure from the otherwise applicable sentencing guidelines. [*Id.*]. Movant also reserved his right to appeal if the Government appealed the sentence. [*Id.*].

On September 16, 2008, the Court sentenced Movant to a total term of 121 months of imprisonment, five years of supervised release, and a $200 special assessment. [Doc. 1156]. On September 22, 2008, Movant filed a timely notice of appeal. [Docs. 1205, 1216]. Movant's attorney, however, moved to withdraw from further representation of Movant and filed a brief under *Anders v. California*, 386

U.S. 738 (1967).[1]  [Doc. 1454].  On June 19, 2009, the United States Court of Appeals for the Eleventh Circuit granted counsel's motion to withdraw and affirmed Movant's conviction and sentence.  [*Id.*].

On June 18, 2010, Movant filed a motion to vacate under 28 U.S.C. § 2255, raising the following grounds for relief:

1.   counsel was ineffective for failing to inform Movant of the deportation consequences of his guilty plea; and

2.   counsel was ineffective for failing to "advise, discuss and permit" Movant to review and object to the erroneous presentence investigation report ("PSR").

[Doc. 1498].

II.   Standard of Review

Under § 2255, individuals sentenced by a federal court can attack the sentence imposed by claiming one of four different grounds:  "(1) that the sentence was imposed in violation of the Constitution or laws of the United States; (2) that the court was without jurisdiction to impose such sentence; (3) that the sentence was in excess of the maximum authorized by law; and (4) that the sentence is otherwise

_____

[1]"The so-called '*Anders* brief' serves the valuable purpose of assisting the court in determining both that counsel in fact conducted the required detailed review of the case and that the appeal is indeed so frivolous that it may be decided without an adversary presentation."  *Penson v. Ohio*, 488 U.S. 75, 81-82 (1988).

subject to collateral attack." *Hill v. United States*, 368 U.S. 424, 426-27 (1962); *see generally United States v. Hayman*, 342 U.S. 205 (1952). "To obtain collateral relief a prisoner must clear a significantly higher hurdle than would exist on direct appeal." *United States v. Frady*, 456 U.S. 152, 166 (1982). Movant must establish that the facts surrounding his claim present "exceptional circumstances where the need for the remedy afforded by the writ of habeas corpus is apparent." *Bowen v. Johnston*, 306 U.S. 19, 27 (1939).

This Court may deny § 2255 relief without an evidentiary hearing if "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255; *see Long v. United States*, 883 F.2d 966, 968 (11th Cir. 1989). Under § 2255, however, an evidentiary hearing is required when the Court cannot determine from the record that the prisoner is entitled to no relief. *Diaz v. United States*, 930 F.2d 832, 834 (11th Cir. 1991). As discussed below, the motion and record of the case conclusively show that Movant is not entitled to relief or to an evidentiary hearing.

4

III. Discussion

    A. <u>Movant's Waiver Precludes Him From Raising an Ineffective Assistance Claim Related to Sentencing.</u>

The Government contends that Ground Two raised by Movant in his § 2255 motion, that counsel was ineffective for failing to "advise, discuss and permit" Movant to review and object to the erroneous PSR, should not be entertained by the Court because Movant, in the negotiated plea agreement, waived the right to collaterally attack his sentence. The waiver signed by Movant states:

> 12. LIMITED WAIVER OF APPEAL: To the maximum extent permitted by federal law, the defendant voluntarily and expressly waives the right to appeal his sentence and the right to collaterally attack his sentence in any post-conviction proceeding on any ground, except that the defendant may file a direct appeal of an upward departure from the otherwise applicable sentencing guideline range. The defendant understands that this Plea Agreement does not limit the Government's right to appeal, but if the Government appeals the sentence imposed, the defendant may also file a direct appeal of his sentence.

[Doc.410-1 at 5-6, ¶12].

A defendant who enters into a plea agreement may waive his right to appeal or collaterally challenge his sentence, and the waiver will be enforced if it is made knowingly and voluntarily. *See United States v. Weaver*, 275 F.3d 1320, 1333 (11th Cir. 2001); *United States v. Bushert*, 997 F.2d 1343, 1350 (11th Cir. 1993). "One of the keys to enforcing a sentence appeal waiver is that the defendant knew he had a

'right to appeal his sentence and that he was giving up that right.'" *Bushert*, 997 F.2d at 1350 (quoting *United States v. Rutan*, 956 F.2d 827, 830 (8th Cir. 1992)). In order to prevail in an argument to enforce a waiver, the Government must show that either "(1) the district court specifically questioned the defendant concerning the sentence appeal waiver during the Rule 11 [plea] colloquy, or (2) it is manifestly clear from the record that the defendant otherwise understood the full significance of the waiver." *Bushert*, 997 F.2d at 1351.

Movant acknowledged at the plea hearing that the plea agreement provided his intention to plead guilty, that he had signed it, and that he had no questions for the Court. [Doc. 1123 at 4, 49]. In addition, the Court addressed the negotiated appeal waiver with Movant during the Rule 11 plea colloquy as follows:

> THE COURT: Did each defendant, in connection with the guilty plea struck with the government, agree to a limited waiver?

> THE GOVERNMENT: Yes, Your Honor, it covers both direct appeal and collateral attack.

> THE COURT: Thank you. Do each of you understand that whatever sentence this Court imposes at your sentencing hearing, you will not be able to appeal that sentence unless that sentence is an upward departure from the applicable custody guideline range, or if the government decides to appeal then you would be free to appeal? Only in those two instances will you be able to appeal your sentence.
> Do each of you understand that? Mr. Franklin?

DEFENDANT FRANKLIN:  Yes, sir.

THE COURT:  Mr. Cardenas?

DEFENDANT CARDENAS:  Yes, sir.

THE COURT:  Mr. Bejarano?

DEFENDANT BEJARANO:  Yes, Your Honor.

THE COURT:  And do each of you understand that you also gave up your right to collaterally attack any sentence this Court might impose at your sentencing hearing?  Mr. Franklin?

DEFENDANT FRANKLIN:  Yes, sir.

THE COURT:  Mr. Cardenas?

DEFENDANT CARDENAS:  Yes, sir.

THE COURT:  Mr. Bejarano?

DEFENDANT BEJARANO:  Yes, Your Honor.

[Doc. 1123 at 31-32].

Here, it is clear from the record that Movant knowingly and voluntarily waived his right to appeal and collaterally challenge his sentence.  Movant specifically acknowledged by signing the appeal waiver that he understood and agreed to waive his appeal rights voluntarily notwithstanding the Court's determination of his ultimate sentence. [Doc. 410-1 at 13].  Further, the Court explained to Movant during the plea

7

colloquy that he was waiving his right to collaterally attack his sentence by signing the appeal waiver, and Movant indicated that he understood that he had waived that right. [Doc. 1123 at 31-32]; *see United States v. Stevenson*, 131 F. App'x 248, 250 (11th Cir. May 12, 2005) (holding that, for a waiver to be valid, "during the plea colloquy, the district court must at least refer to the fact that the defendant is waiving his rights to appeal his sentence under most or certain circumstances"). Thus, Movant's waiver is valid.

When a movant challenges the constitutionality of his conviction or sentence after having waived the right to do so in a plea agreement, "the right to mount a collateral attack pursuant to § 2255 survives only with respect to those discrete claims which relate directly to the negotiation of the waiver." *Jones v. United States*, 167 F.3d 1142, 1145 (7th Cir. 1999). Finding that "a valid sentence-appeal waiver, entered into voluntarily and knowingly, pursuant to a plea agreement, precludes the defendant from attempting to attack, in a collateral proceeding, the sentence through a claim of ineffective assistance of counsel during sentencing," the Eleventh Circuit opined that to hold otherwise would "permit a defendant to circumvent the terms of the sentence-appeal waiver simply by recasting a challenge to his sentence as a claim of ineffective assistance, thus rendering the waiver meaningless." *Williams v. United*

*States*, 396 F.3d 1340, 1342 (11th Cir. 2005).

Here, Movant's claim in Ground Two that counsel was ineffective for failing to "advise, discuss and permit" Movant to review and object to the erroneous PSR does not relate to the negotiation of the plea or waiver. Thus, Movant's waiver of his rights to challenge his sentence is controlling with respect to his ineffective assistance of counsel claim dealing with the PSR. *See United States v. Smith*, 371 F. App'x 901, 904 (10th Cir. 2010) (holding defendant's claim that his trial counsel was ineffective for failing to object to PSR was within scope of appellate waiver contained in his plea agreement).

> B. Movant's First Ground For Relief is Without Merit Because Padilla Does Not Apply Retroactively.

In Ground One, Movant contends that counsel was ineffective for failing to inform Movant of the deportation consequences of his guilty plea. The appeal waiver contained in Movant's plea agreement does not bar this claim because the claim challenges the validity of the guilty plea itself. The standard for evaluating ineffective assistance of counsel claims was set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). Under the two-part *Strickland* standard, "the petitioner must show that counsel's representation fell below an objective standard of reasonableness." *Strickland*, 466 U.S. at 688. Next, Movant must prove "that there is a reasonable

probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. "In order to meet the first prong of this test, however, counsel's failure to warn of the immigration consequences of a plea must fall below the objective standard of reasonableness." *Sarria v. United States*, No. 11-20730-CIV, 2011 WL 4949724, at *2 (S.D. Fla. Oct. 18, 2011). In *Padilla v. Kentucky*, the case relied on by Movant in Ground One, the Supreme Court held that a criminal defense attorney may render constitutionally ineffective assistance by failing to advise his non-citizen client of the risk of deportation associated with a guilty plea. *Padilla*, 130 S. Ct. 1473 (2010). Because *Padilla* was decided after Movant's conviction became final on direct review, Movant seeks to retroactively apply the Supreme Court's holding in *Padilla* to his case on collateral review.

### 1. *Padilla v. Kentucky*

In *Padilla*, the defendant claimed that his counsel failed to advise him of the effect of his guilty plea on his immigration status. *Padilla*, 130 S.Ct. at 1478. The defendant "allege[d] that he would have insisted on going to trial if he had not received incorrect advice from his attorney." *Id.* The Supreme Court of Kentucky denied the defendant's post-conviction relief, holding "that the Sixth Amendment's guarantee of effective assistance of counsel does not protect a criminal defendant

10

from erroneous advice about deportation because it is merely a 'collateral' consequence of his conviction." *Id.*

Before concluding that the test it set out in *Strickland* applied to the claim presented in *Padilla*, the Supreme Court first addressed the lower court's view that "collateral consequences are outside the scope of representation required by the Sixth Amendment." *Padilla*, 130 S. Ct. at 1481 & n.9 (citing decisions from six federal courts of appeal, including *Campbell*, in noting that the lower court was "far from alone in this view"). The Supreme Court refused to apply the distinction between direct and collateral consequences, finding it "ill-suited to evaluating a *Strickland* claim concerning the specific risk of deportation," and concluded that "advice regarding deportation is not categorically removed from the ambit of the Sixth Amendment right to counsel." *Id.* at 1481-82.

With regard to the *Strickland* test, the Court stated that "[i]t is quintessentially the duty of counsel to provide her client with available advice about an issue like deportation and the failure to do so clearly satisfies the first prong of the *Strickland* analysis." *Id.* at 1484 (internal quotation marks omitted). Although the Supreme Court found the first prong of *Strickland* was met, whether the defendant in *Padilla* was entitled to relief depended upon whether he could show prejudice, the second

11

prong of the *Strickland* analysis. *Id.* at 1487. The Court remanded the case in order to determine whether the defendant could "demonstrate prejudice as a result" of his counsel's conduct. *Id.*

In the current case, Movant seeks to apply the Supreme Court's ruling in *Padilla* to show that his counsel's conduct fell below a reasonable standard and prove that he was therefore prejudiced. Accordingly, the issue is whether this Court should apply the ruling in *Padilla* retroactively.

 2. The *Teague* Retroactivity Doctrine

"The *Teague* doctrine bars retroactive application in a § 2255 proceeding of any new constitutional rule of criminal procedure which had not been announced at the time the movant's conviction became final, with two narrow exceptions." *McCoy v. United States*, 266 F.3d 1245, 1255 (11th Cir. 2001) (citing *Teague*, 489 U.S. at 310-13). The exceptions are if the new rule (1) "places certain kinds of primary private individual conduct beyond the power of the criminal law-making authority to proscribe" or (2) "requires the observance of those procedures that . . . are implicit in the concept of ordered liberty," i.e., "new procedures without which the likelihood of an accurate conviction is seriously diminished." *Teague*, 489 U.S. at 307, 313 (quotations omitted).

12

A case announces a "new rule" if it "breaks new ground or imposes a new obligation on the States or the Federal Government. To put it differently, a case announces a new rule if the result was not *dictated* by precedent existing at the time the defendant's conviction became final." *Id.* at 301 (citations omitted). "A result is not dictated by precedent just because the result the habeas petitioner seeks is within the logical compass of a prior Supreme Court decision, or because prior Supreme Court decisions inform, or even control or govern, the analysis of the claim." *Howard v. United States*, 374 F.3d 1068, 1074 (11th Cir. 2004) (quotations omitted). Instead, "a result is dictated by precedent only if the court considering the claim at the time the conviction became final 'would have felt compelled by existing precedent to conclude that the rule [the defendant] seeks was required by the Constitution.'" *Id.* (quoting *Glock v. Singletary*, 65 F.3d 878, 884 (11th Cir. 1995)).

### 3. Circuit Splits

The question of whether *Padilla* represents a new rule or merely a variation on the *Strickland* analysis has resulted in a recent split among the Circuit Courts of Appeals. The Third Circuit recently addressed this issue in *United States v. Orocio*, 645 F.3d 630 (3d Cir. 2011), and held that the Supreme Court's decision in *Padilla* should be "retroactively applicable on collateral review." *Orocio*, 645 F.3d at 634.

13

In *Orocio*, the defendant was a lawful permanent resident who, based on the advice of his counsel, pled guilty to one count of simple possession of a controlled substance. *Id.* The defendant filed a *coram nobis* petition alleging that his attorney did not "provide the effective assistance of counsel required by *Strickland*." *Id.* at 635. The court found that using *Padilla* within the *Strickland* analysis "is not so removed from the broader outlines of precedent as to constitute a 'new rule,' for the Court had long required effective assistance of counsel on all 'important decisions.'" *Id.* at 638 (*citing Strickland*, 466 U.S. at 688). Because the first prong of the *Strickland* analysis is based upon a determination of whether the attorney's representation "fell below an objective standard of reasonableness," the Court reasoned that *Padilla* simply applied "the norms of the legal profession that insist upon adequate warning to criminal defendants of immigration consequences." *Id.* at 638. "[B]ecause *Padilla* followed directly from *Strickland* and long-established professional norms, it is an 'old rule' for *Teague* purposes," and the Third Circuit found that it applied retroactively. *Id.* at 641.

Two other circuits, however, have recently reached the opposite conclusion.[2]

---

[2]The Fourth Circuit has not directly ruled on the issue, but has noted that, "nothing in the *Padilla* decision indicates that it is retroactively applicable to cases on collateral review." *United States v. Hernandez-Monreal*, 404 F. App'x 714, 715

14

In *Chaidez v. United States*, No. 10–3623, 2011 WL 3705173 (7th Cir. Aug. 23, 2011), the Seventh Circuit concluded that the *Padilla* decision constituted a new rule that did not fall within the two exceptions laid out in *Teague* and therefore should not apply retroactively.[3]  In *Chaidez*, the defendant was a lawful permanent resident of the United States who, on the advice of counsel, pled guilty to mail fraud involving a loss in excess of $10,000, thus rendering her eligible for deportation. *Id.* at *1.  The defendant then alleged ineffective assistance of counsel because her attorney never informed her of the consequences her plea would have on her immigration status. *Id.*

The Seventh Circuit applied the *Teague* analysis and inquired into whether a court considering the defendant's claim, prior to the decision in *Padilla*, "would have felt compelled by existing precedent to conclude that [*Padilla*] was required by the Constitution." *Id.* at *3 (*quoting Saffle v. Parks*, 494 U.S. 484, 488 (1990)).  The Seventh Circuit determined that the *Padilla* decision was not compelled by precedent based upon the "narrow definition of what constitutes an old rule," the decisions of lower courts, and the differing opinions within the Supreme Court in *Padilla* itself.

n. 1 (4th Cir. 2010).

[3]In *Chaidez*, "the parties agree[d] that if *Padilla* announced a new rule neither exception to non-retroactivity applies." *Id.* at *3.

15

*Chaidez*, 655 F.3d 684, 2011 WL 3705173, at *8.

The *Chaidez* court noted that, prior to the Court's decision in *Padilla*, "the lower federal courts consistently reaffirmed that deportation is a collateral consequence of a criminal conviction and that the Sixth Amendment does not require advice regarding collateral consequences." *Id.* at *5. Further, "at least nine Courts of Appeals had uniformly held that the Sixth Amendment did not require counsel to provide advice concerning any collateral (as opposed to direct) consequences of a guilty plea." *Id.*

The *Chaidez* court also reasoned that the varying opinions within the Supreme Court regarding the outcome in *Padilla* indicated that it could not have been dictated by precedent. *Chaidez*, 655 F.3d 684, 2011 WL 3705173, at *4. "Lack of unanimity on the Court in deciding a particular case supports the conclusion that the case announced a new rule." *Id.* The justices of the *Padilla* Court offered such an "array of views." *Id.* The concurrence in *Padilla* noted that the majority's decision was ground-breaking, referring to the holding as a "dramatic departure from precedent." *Id.*(*citing Padilla*, 130 S. Ct. at 1488). In his dissent, Justice Scalia stated that "[t]here is no basis in text or in principle to extend the constitutionally required advice regarding guilty pleas beyond those matters germane to the criminal

prosecution at hand." *Padilla*, 130 S. Ct. at 1495.

The Tenth Circuit reached a similar result in *United States v. Chang Hong*, No. 10–6294, 2011 WL 3805763 (10th Cir. Aug. 30, 2011). In *Chang Hong*, the defendant was of South Korean descent and a permanent legal resident of the United States. *Chang Hong*, 2011 WL 3805763, at *1. While in jail after pleading guilty to a drug crime and being sentenced to 37 months, the defendant was notified he was subject to removal from the United States. *Id.* The defendant sought to vacate his conviction and sentence as well as to withdraw his guilty plea based on ineffective assistance of counsel due to his counsel's failure to advise him as to the immigration consequences of his plea. *Id.* The Tenth Circuit determined that *Padilla* represents a new rule "because it was not compelled by existing precedent at the time [defendant's] conviction became final." *Id.* at *3. Additionally, the Tenth Circuit examined the decisions of lower courts as well as noting the "strong concurrence and dissent" in *Padilla*. *Id.* at *6. It found that prior to the decision in *Padilla*, "most state and federal courts had considered the failure to advise a client of potential collateral consequences of a conviction to be outside the requirements of the Sixth Amendment." *Id.* at *6. In holding the decision in *Padilla* did not apply retroactively, the *Chang Hong* court wrote that "*Padilla* marked a dramatic shift

when it applied *Strickland* to collateral civil consequences of a conviction—a line courts had never crossed before." *Id.* at *7.

### 4. *Padilla* Announced A New Rule that is Not Retroactively Applicable.

Movant's case is much like the cases discussed above. Movant is not a citizen of the United States and pled guilty to crimes leading to potential immigration consequences. Movant seeks to apply the Court's ruling in *Padilla* retroactively. The reasoning set forth in the decisions of the Seventh and Tenth Circuits, however, is more persuasive than that of the Third Circuit, and accordingly, I find that *Padilla* is a new rule that does not apply retroactively.

As discussed above, a rule is considered old when "a court considering the defendant's claim at the time his conviction became final would have felt compelled by existing precedent to conclude that the rule he seeks was required by the Constitution." *Chang Hong*, 2011 WL 3805763, at *5 (quoting *O'Dell v. Netherland*, 521 U.S. 151, 156 (1997)). Before *Padilla*, the Eleventh Circuit decided two cases involving the issue of criminal defense counsel's advice on the immigration consequences associated with a guilty plea. *United States v. Campbell*, 778 F.2d 764 (11th Cir. 1985), *abrogated by Padilla v. Kentucky*, 130 S. Ct. 1473 (2010); *Downs-Morgan v. United States*, 765 F.2d 1534 (11th Cir. 1985). In *Campbell*, the court

18

held that a lawyer's failure to advise her client of the risk of deportation does not constitute constitutionally ineffective assistance of counsel. 778 F.2d at 768-69. In *Downs-Morgan*, the court held that a lawyer's affirmative misadvice to her client regarding the risk of deportation does not necessarily constitute ineffective assistance, but may do so in the "unique circumstances" where the client faces "imprisonment and execution" if she is deported. 765 F.2d at 1540-41 & n.15.

Given that "a result is dictated by precedent only if the court considering the claim at the time the conviction became final 'would have felt compelled by existing precedent to conclude that the rule [the defendant] seeks was required by the Constitution,'" *Howard*, 374 F.3d at 1074, it follows from the precedent existing at the time Movant's conviction became final that *Padilla*'s result was not dictated. Thus, *Padilla* announced a new rule. *See id.*; *Glock*, 65 F.3d at 884. As the Seventh Circuit noted, "if *Padilla* is considered an old rule, it is hard to imagine an application of *Strickland* that would qualify as a new rule." *Chaidez*, 655 F.3d 684, 2011 WL 3705173, at *7.

*Padilla* does not appear to fall within the two narrow exceptions set out in *Teague*. As noted by the court in *Chang Hong*, "A new rule will apply retroactively to a final conviction only under very limited circumstances." *Chang Hong*, 2011 WL

AO 72A
(Rev.8/82)

3805763, at *8. The Tenth Circuit noted that because the rule in *Padilla* is not substantive, only the procedural exception to non-retroactivity might apply. *Id.* The *Chang Hong* court then recognized that "[t]he exception is quite narrow, and since *Teague*, the [Supreme] Court has rejected every attempt to fit a case within the exception. To surmount this 'watershed' requirement, a new rule (1) 'must be necessary to prevent an impermissibly large risk of an inaccurate conviction,' and (2) 'must alter our understanding of the bedrock procedural elements essential to the fairness of a proceeding.'" *Id.* (internal citations omitted). I conclude that *Padilla* does not fall within this exception to non-retroactivity. *Padilla* therefore is a new rule that does not apply retroactively to Movant's case. *See Sarria*, 2011 WL 4949724, at *3-6 (analyzing *Padilla* and circuit court cases and holding that *Padilla* is a new rule that does not apply retroactively).

Furthermore, even if Movant could apply *Padilla* retroactively, thus meeting the first prong of the *Strickland* analysis, he is unable to show prejudice and overcome the second prong of the test. Movant does not allege that had he known about the consequences of his immigration status he would not have pled guilty and would have elected to go to trial. [Doc. 1498 at 4]. He has not proclaimed his innocence or alleged any potential defenses. Under the *Strickland* analysis, Movant

20

must demonstrate a "reasonable probability" that the result would have been different, but for counsel's errors. *Bradford v. Whitely*, 953 F.2d 1008, 1012 (5th Cir. 1992). He has not met that showing here. Thus, his claim raised in Ground One is without merit.

IV. <u>Certificate of Appealability</u>

According to Rule 11 of the Rules Governing Section 2255 Proceedings for the United States District Courts, a district court "must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Under 28 U.S.C. § 2253(c)(2), a certificate of appealability ("COA") shall not issue unless "the applicant has made a substantial showing of the denial of a constitutional right." A prisoner satisfies this standard by demonstrating that reasonable jurists would find that the district court's assessment of his constitutional claims is debatable or wrong and that any dispositive procedural ruling by the district court is likewise debatable. *See Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003); *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

A COA is warranted in this case. As discussed in Part III, above, the resolution of Movant's § 2255 motion largely turns on the issue of whether the Supreme Court's holding in *Padilla* retroactively applies to cases on collateral review. The answer to

21

that question is reasonably debatable among jurists of reason, as demonstrated by the split of authority that has developed in the appellate courts in the year since *Padilla* was decided. *See supra* Part III. Accordingly, I find that Movant might make a substantial showing of the denial of a constitutional right should he appeal the Court's ultimate ruling on his § 2255 motion. I recommend that, if this Report and Recommendation is adopted, the Court issue a COA on the issue of whether *Padilla* announced a new rule of criminal procedure that is retroactively applicable to cases on collateral review.

V. <u>Conclusion</u>

Based on the foregoing, **I RECOMMEND** that Movant Sergio Bejarano's motion to vacate sentence [Doc. 1498] be **DENIED**, and that a COA be **GRANTED**.

**I FURTHER RECOMMEND** that Movant's motion for an evidentiary hearing [Doc. 1512] and motion to inquire about the status of the case [Doc. 1513] be **DENIED** as moot.

The Clerk is **DIRECTED** to terminate the referral to me.

**IT IS SO RECOMMENDED**, this 10th day of November, 2011.

AO 72A
(Rev.8/82)

GERRILYN G. BRILL
UNITED STATES MAGISTRATE JUDGE

AO 72A
(Rev.8/82)